IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 115,887
115,888
115,889

STATE OF KANSAS,
*Appellee*,

v.

JACOB J. MCALISTER, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

In a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending.

2.

After a direct appeal is final, a movant seeking the correction of an illegal sentence under K.S.A. 22-3504(1) will have the sentence's legality determined by the law in effect at the time the sentence was pronounced, unaffected by any subsequent change in the law.

3.

Although true changes in the law cannot transform a once legal sentence into an illegal sentence for purposes of correcting an illegal sentence under K.S.A. 22-3504(1), it may be possible for developments in the law to impact the original analysis of whether the sentence was illegal when pronounced.

Review of the judgment of the Court of Appeals in 54 Kan. App. 2d 65, 396 P.3d 100 (2017). Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed July 12, 2019. Judgment of the Court of Appeals reversing the district court is reversed. Judgment of the district court is affirmed and the cases are remanded with directions.

*Gerald E. Wells*, of Jerry E. Wells, Attorney-at-Law, of Lawrence, argued the cause, and *J. Scott James*, of James Law Firm LLC, of Greensburg, was on the briefs for appellant.

*Brian R. Sherwood*, assistant county attorney, argued the cause, and *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: The State seeks our review of the Court of Appeal's decision reversing the district court's summary denial of Jacob J. McAlister Jr.'s 2015 motions to correct his allegedly illegal sentences imposed in 1996. McAlister's K.S.A. 22-3504 motions contend that his sentences were based on an incorrect criminal history score because his pre-Kansas Sentencing Guidelines Act (KSGA) burglary convictions should have been classified as nonperson felonies.

The district court found McAlister's motions to be procedurally barred, but the Court of Appeals held that, pursuant to this court's opinion in *State v. Dickey*, 305 Kan. 217, 380 P.3d 230 (2016) (*Dickey II*), the motions were not procedurally barred. Further, the panel held that *Dickey II* required that McAlister's pre-KSGA convictions be classified as nonperson felonies. *State v. McAlister*, 54 Kan. App. 2d 65, 75-76, 78-79, 396 P.3d 100 (2017). Because McAlister's sentences were legal when pronounced and were final before the change in the law upon which he relies, we reverse the Court of

Appeals and affirm the district court's denial of McAlister's K.S.A. 22-3504 motions, albeit based upon a different rationale.

FACTUAL AND PROCEDURAL BACKGROUND

McAlister was convicted in 1996 in three separate criminal cases, which were consolidated on direct appeal. His convictions included several counts of possession of opiates, nonresidential burglary, conspiracy to commit burglary, misdemeanor theft, criminal damage to property, and three counts of aggravated robbery. He received sentences of 52 months, 257 months, and 206 months, which were ordered to run consecutive. His convictions and sentences were affirmed on direct appeal. *State v. McAlister*, No. 78,378, unpublished opinion filed December 4, 1998 (Kan. App.), *rev. denied* 266 Kan. 1113 (1999). The mandate issued on February 3, 1999, making McAlister's sentences final for purposes of postconviction relief. Cf. K.S.A. 60-1507(f)(1)(A) (final order of last appellate court on direct appeal starts one-year time limit to file 60-1507 motion). Pointedly, that finality occurred before *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), held that judicial fact-finding by a sentencing court was unconstitutional.

McAlister's sentences were based on a criminal history score of A. His criminal history score included two burglary convictions and one conspiracy to commit burglary, all from 1992, before the KSGA took effect. Each conviction was scored as a person felony.

In 2015, McAlister filed motions to correct an illegal sentence, pursuant to K.S.A. 22-3504(1), in each of the three cases. That year, this court filed its opinion in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015) (*Dickey I*), which held that a pre-KSGA burglary conviction could not be scored as a person felony because doing so would require the judicial fact-finding prohibited by *Apprendi*. After a hearing, the district court

denied McAlister's motions, finding that they were procedurally barred by res judicata and that this court's holding in *Dickey I* did not retroactively apply to McAlister.

While McAlister's appeal to the Court of Appeals was pending, this court decided *Dickey II*, which held that the "at any time" language in K.S.A. 22-3504(1) foreclosed the res judicata and retroactivity arguments upon which the district court had relied in this case. The Court of Appeals majority dutifully endeavored to apply this court's decision in *Dickey II* and reversed the district court's determination that McAlister's challenge was barred by res judicata and remanded for resentencing in conformance with the *Dickey I* holding. *McAlister*, 54 Kan. App. 2d at 75-76, 78-79. A concurring opinion challenged the rationale of *Dickey II*, opining that the issue involved the application of *Apprendi*'s constitutional rule, not the interpretation of statutory law; that the opinion contradicted precedent prohibiting the retroactive application of new caselaw; and that interpreting K.S.A. 22-3504(1)'s "at any time" language to override considerations of res judicata was contrary to precedent. 54 Kan. App. 2d at 79-83 (Gardner, J., concurring).

We granted the State's petition to review the Court of Appeals' decision.

LEGALITY OF MCALISTER'S SENTENCES

The State argues that the Court of Appeals erred because McAlister's sentence was final before *Apprendi* was decided, and that McAlister should not receive the benefit of the later caselaw in *Dickey I* and *II* that applied *Apprendi*. In other words, the State contends that a sentence that was legal when imposed is not subsequently rendered illegal by a change in the law. Based upon our recent caselaw, we agree.

4

*Standard of Review*

Whether a sentence is illegal is a question of law subject to unlimited review. *State v. Donahue*, 309 Kan. 265, 267, 434 P.3d 230 (2019). Interpretation of statutes is also a matter of law subject to unlimited review. *State v. Jamerson*, 309 Kan. 211, 214, 433 P.3d 698 (2019).

*Analysis*

Pursuant to K.S.A. 22-3504(1) "[t]he court may correct an illegal sentence at any time." A sentence is illegal under K.S.A. 22-3504 if it: (1) was imposed by a court lacking jurisdiction; (2) does not conform to statutory provisions in character or term of punishment authorized; or (3) is ambiguous with regard to the time and manner it is to be served. *State v. Noyce*, 301 Kan. 408, 409-10, 343 P.3d 105 (2015). McAlister relies on the second circumstance; he argues that his sentences did not conform to the statutory provisions governing the calculation of a criminal history score which in turn resulted in an unauthorized term of punishment.

The KSGA, enacted in 1993, introduced the person/nonperson categorization of crimes and mechanisms used to determine how prior crimes should be accounted during sentencing proceedings. K.S.A. 21-4701 et seq.; see K.S.A. 2018 Supp. 21-6811 (determination of criminal history classification). Prior convictions for person felonies increase the criminal history score more than nonperson felony convictions and, thus, result in longer prison terms. Of particular importance here is the post-1993 burglary statute requirement that the burglarized structure must be a dwelling in order for a burglary conviction to be classified as a person crime. The pre-1993 burglary statute did not have a dwelling requirement. Compare K.S.A. 2018 Supp. 21-5807(a)(1), (c)(1)(A), with K.S.A. 1991 Supp. 21-3715.

5

In *Apprendi*, the United State Supreme Court said that facts which increase a sentence beyond a statutory maximum must be decided by a jury, not a judge, because to do otherwise violates a defendant's constitutional right to have guilt determined by a jury. 530 U.S. at 490. *Dickey I* explained that because there was no pre-KSGA burglary crime requiring as an element that the burglarized structure be a dwelling, classifying a pre-KSGA burglary as a person felony required the sentencing judge to delve into the factual underpinnings of the prior conviction and engage in judicial fact-finding, which was declared to be unconstitutional in *Apprendi*. 301 Kan. at 1039-40.

*Dickey I* was a direct appeal. *Dickey II* expanded this holding to probation revocations for convictions that were final before *Dickey I* was decided. *Dickey II* recognized that the improper classification of the prior crime came with a "thick overlay of constitutional law," but the resulting sentence's illegality was based on statutory, not constitutional, grounds. 305 Kan. at 221-22. In other words, it is the nonconformity with our interpretation of Kansas statutory provisions that renders the sentence illegal.

But as the panel in this case intimated, the interface of our statutory interpretation of the KSGA criminal history provisions and the thick overlay of changes in federal constitutional law has created an evolving body of Kansas law. See *McAlister*, 54 Kan. App. 2d at 76-78. While *Dickey II* clarified that K.S.A. 22-3504's statutory directive that an illegal sentence may be corrected "at any time" supersedes the normal procedural hurdles of res judicata and retroactivity, the opinion did not specifically address the point in time that should be analyzed to determine a sentence's legality under that statute.

We subsequently addressed that question head-on in *State v. Murdock*, 309 Kan. 585, 439 P.3d 307 (2019) (*Murdock II*). The *Murdock* holding applicable here is that a subsequent change in the law cannot transform a legal sentence into an illegal sentence. Specifically, we said that:

6

"the legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law." 309 Kan. at 591.

*Murdock II* did not, however, "disturb our longstanding rule that in a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending. See, e.g., *State v. Ford*, 302 Kan. 455, 471, 353 P.3d 1143 (2015) ('[I]t is generally true that changes in the law apply prospectively and only to cases on direct review.')." 309 Kan. at 591. But a person moving to correct an illegal sentence under K.S.A. 22-3504(1), like McAlister in this case, "is stuck with the law in effect at the time the sentence was pronounced." 309 Kan. at 592.

McAlister does not argue that his sentences were illegal on February 3, 1999, when his direct appeal mandate was issued and his sentences became final. Rather, he contends that his sentences were rendered illegal by our decisions a decade and a half later in *Dickey I* and *II*, which were, in turn, founded on the June 2000 change in the law effected by *Apprendi*. Put simply, *Murdock II* precludes that argument. McAlister's attempt to avail himself of *Apprendi*'s subsequent change in the law in a motion to correct an illegal sentence is unavailing.

*Murdock II* further clarified that while "true *changes* in the law cannot transform a once legal sentence into an illegal sentence," there might be "developments in the law [that] may shine new light on the original question of whether the sentence was illegal when pronounced." 309 Kan. at 592. Any argument that *Apprendi* was simply an explanatory development in the law would border on frivolity. The year following *Apprendi*, this court discussed its effect:

"Since the Supreme Court's June 26, 2000, ruling in *Apprendi,* 'hundreds of appeals have been filed and scores of decisions handed down interpreting the ruling.' David E. Rovella, *A Looming 'Apprendi' tsunami?*, The National Law Journal, Jan. 8, 2001, at A1. There is little dispute that *Apprendi* has had an immediate and dramatic impact on criminal law. Indeed, Justice O'Connor presaged the *Apprendi* phenomenon by warning in her dissent that the decision represented 'a watershed change in constitutional law' whose effect on state and federal determinate sentencing schemes would likely be 'severe.' 530 U.S. at 524 (O'Connor, J., dissenting)." *State v. Gould*, 271 Kan. 394, 406, 23 P.3d 801 (2001).

Finally, we note that in 2017 and 2019 the Legislature amended K.S.A. 22-3504 with language that addresses the applicability of subsequent changes in the law to the determination of whether a sentence is illegal. Those changes do not impact our decision.

In sum, McAlister's sentences were legal when imposed and remained so at the time his direct appeal became final. Subsequent changes in the law did not render McAlister's sentences illegal for purposes of a K.S.A. 22-3504(1) motion to correct an illegal sentence. We reverse the Court of Appeals reversal of the district court and remand with directions to reinstate McAlister's original lawful sentences.

Reversed and remanded with directions.

LUCKERT, J., not participating.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 115,887, 115,888, and 115,889 vice Justice Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.