No. 122,255

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SPENCER ADAMS,
*Appellant.*

SYLLABUS BY THE COURT

1.

Whether a sentence is illegal within the meaning of K.S.A. 2019 Supp. 22-3504 turns on interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801 et seq.

2.

Whether a prior conviction should be classified as a person or nonperson offense involves interpretation of the KSGA. Interpretation of a statute is a question of law over which appellate courts have unlimited review.

3

An "illegal sentence" as defined by K.S.A. 2019 Supp. 22-3504(c)(1) is a sentence that is imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced.

1

4.

The legality of a sentence under K.S.A. 2019 Supp. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced.

5.

A pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law.

6.

A sentence is only illegal if it fits the definition of "illegal sentence" in K.S.A. 2019 Supp. 22-3504(c)(1). A sentence is not an illegal sentence because of a change in the law that occurs after the sentence is pronounced. If a sentence was legal when originally imposed, a subsequent change in the law cannot transform a legal sentence into an illegal sentence.

7.

Appellate courts presume the Legislature does not intend to enact meaningless legislation when it amends a statute. Appellate courts also generally presume the Legislature acts with full knowledge about statutory subject matter, including prior and existing law and judicial decisions interpreting the same.

8.

When interpreting a statute, an appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language and should refrain from reading something into the statute not readily found in its words.

9.

The language of K.S.A. 2019 Supp. 22-3504(c)(2) is plain and unambiguous: A "change in the law" means a statutory change or an opinion by an appellate court of the State of Kansas, unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction.

Appeal from Wyandotte District Court; JENNIFER ORTH MYERS, judge. Opinion filed October 2, 2020. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant, and *Spencer Adams*, appellant pro se.

*Daniel G. Obermeier*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and BUSER, JJ.

SCHROEDER, J.: Spencer Adams timely appeals from the denial of his two pro se motions to correct an illegal sentence. Adams was sentenced in 2010 and timely filed a direct appeal. While Adams' appeal was pending, our Supreme Court issued its decision in *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010). Adams made no arguments under *Williams* in his direct appeal; his convictions and sentence were affirmed in 2013. Adams now argues his criminal history score should have been determined based on our Supreme Court's ruling in *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014) (*Murdock I*). He reasons he would have been entitled to the benefit of the change in the law under *Williams* because it was decided while his direct appeal was pending, and he asserts the decision in *Murdock I* was premised on *Williams*; therefore, *Murdock I* is controlling as to the legality of his sentence. We disagree with Adams' reasoning and affirm the district court.

3

Spencer Adams was convicted of one count of attempted second-degree murder for acts he committed on October 10, 2008. At sentencing on July 9, 2010, the district court determined Adams' criminal history score was B, which included a 1988 Missouri robbery conviction classified as a person felony. Adams was sentenced to 228 months' imprisonment. Adams directly appealed, and his conviction and sentence were affirmed on appeal. See *State v. Adams*, No. 106,059, 2012 WL 4677843, at *1 (Kan. App. 2012) (unpublished opinion). The Supreme Court denied his petition for review, and the mandate was issued on September 5, 2013.

On November 6, 2014, Adams filed his first pro se motion to correct an illegal sentence, arguing his Missouri robbery conviction was improperly classified as a person offense under *Murdock I*. On August 24, 2015, the district court appointed counsel to represent Adams on his motion. An agreed journal entry was filed on November 4, 2015, continuing the matter pending the issuance of the mandate in *State v. Keel*, 302 Kan. 560, 357 P.3d 251 (2015). But no further action was taken until Adams filed his second pro se motion to correct an illegal sentence on June 17, 2019, in which he argued his sentence was illegal under *State v. Murdock*, 309 Kan. 585, 439 P.3d 307 (2019) (*Murdock II*). On July 23, 2019, the district court addressed both of Adams' motions in a single journal entry. The district court summarily denied Adams' motions, finding *Murdock I* was inapplicable when Adams' sentence was pronounced and his sentence was legal when imposed based on then-existing law.

ANALYSIS

*Standard of Review*

Whether a sentence is illegal within the meaning of K.S.A. 2019 Supp. 22-3504 turns on interpretation of the revised Kansas Sentencing Guidelines Act (KSGA), K.S.A. 2019 Supp. 21-6801 et seq. *State v. Dickey*, 305 Kan. 217, 220, 380 P.3d 230 (2016) (*Dickey II*). "Whether a prior conviction should be classified as a person or nonperson offense involves the interpretation of the KSGA. Interpretation of a statute is a question of law over which appellate courts have unlimited review." *Keel*, 302 Kan. at 571-72.

We acknowledge Adams filed a pro se brief, but given the arguments generally cover the same ground as his counseled brief, we will address the issues raised by his counsel.

*Is Adams' sentence illegal?*

An "illegal sentence" as defined by K.S.A. 2019 Supp. 22-3504(c)(1) is "a sentence: Imposed by a court without jurisdiction; that does not conform to the applicable statutory provision, either in character or punishment; or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." Adams argues his sentence is illegal based on the improper scoring of his 1988 Missouri robbery conviction as a person felony for purposes of determining his criminal history at the time the district court sentenced him in July 2010. He argues his Missouri robbery conviction should have been scored as a nonperson felony based on our Supreme Court's decision in *Murdock I*, *overruled by Keel*, 302 Kan. 560.

However, Adams' argument is not that *Murdock I* is directly controlling, at least not insofar as his sentence was definitively illegal under *Murdock I* when it was imposed.

Adams acknowledges *Murdock I* was decided several years after he was sentenced and his direct appeal had concluded prior to the *Murdock I* decision. Adams argues the holding in *Murdock I* should apply because *Murdock I* was predicated on *Williams*, *overruled by Keel*, 302 Kan. 560. But Adams also acknowledges *Williams* was decided after his sentence was imposed. Nevertheless, he argues because *Williams* was decided while his direct appeal was pending, he is entitled to the benefit of the change in the law under *Williams*.

Adams and the State take drastically different positions on the effect of our Supreme Court's subsequent decision in *Murdock II*. Adams and the State both rely on the following language from *Murdock II*:

> "[T]he legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law." 309 Kan. at 591.

Both parties' briefs fail to identify what law was in effect at the moment Adams' sentence was pronounced—July 9, 2010. Adams generally asserts *Williams* was a change in the law that occurred while his direct appeal was pending but fails to explain the nature of the controlling law prior to *Williams*. Similarly, the State generally asserts Adams' sentence was legal when imposed and *Williams* represented a change in the law. But the State neglects to explain the law in existence at the time Adams' sentence was imposed.

1.      *What law applied at the time of Adams' sentencing?*

We are first tasked with determining the applicable law at the time Adams' sentence was imposed. Our Supreme Court offered considerable clarity on this point in

6

*Keel.* Since we are duty-bound to follow Supreme Court precedent, the parties' lack of clear arguments on this point does not limit our analysis. See *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017).

The *Williams* court addressed how out-of-state convictions should be classified for criminal history purposes under the applicable statutory provision in effect at the time—K.S.A. 21-4711(e), repealed L. 2010, ch. 136, § 307 (effective July 1, 2011). 291 Kan. at 556. This same statutory provision was in effect at the time Adams was sentenced in July 2010. K.S.A. 21-4711(e) provided:

> "Out-of-state convictions and juvenile adjudications will be used in classifying the offender's criminal history. An out-of-state crime will be classified as either a felony or a misdemeanor according to the convicting jurisdiction. If a crime is a felony in another state, it will be counted as a felony in Kansas. The state of Kansas shall classify the crime as person or nonperson. In designating [an out-of-state] crime as person or nonperson comparable offenses shall be referred to. If the state of Kansas does not have a comparable offense, the out-of-state conviction shall be classified as a nonperson crime."

The question at issue in *Williams* was which version of the Kansas statute should be looked to in designating the prior crime as person or nonperson—specifically, should the sentencing court look to the comparable Kansas offense in effect at the time the out-of-state crime was committed or to the comparable Kansas offense at the time of the current crime of conviction. 291 Kan. at 556-62. The *Williams* court rejected Williams' argument that *State v. Vandervort*, 276 Kan. 164, 72 P.3d 925 (2003), *overruled in part by State v. Dickey*, 301 Kan. 1018, Syl. ¶ 4, 350 P.3d 1054 (2015) (*Dickey I*), required her prior Washington identity theft convictions to be classified based on the comparable Kansas statutes in effect when she committed her Kansas crimes of conviction. *Williams*, 291 Kan. at 558-60. But *Williams* did not overrule *Vandervort*; it simply held *Vandervort* did not apply in the manner Williams argued. 291 Kan. at 560. Moreover, the *Williams* court believed no controlling law existed on the question presented, stating:

7

"The parties have not cited, and we have not been able to locate, Kansas statutes or case law that answers the specific question before us. Certainly the general guidance contained in K.S.A. 21-4711(e) regarding the scoring of out-of-state convictions as person or nonperson by using comparable Kansas offenses is of little help." 291 Kan. at 560.

In *Keel*, our Supreme Court held the *Williams* court erroneously concluded *Vandervort* was inapplicable, stating:

"Our re-examination of *Williams* today leads us to believe that its departure from *Vandervort* was a mistake and that it led to an unintended emasculation of the established sentencing rule that the penalty parameters for an offense are fixed on the date the offense was committed. See *State v. Sylva*, 248 Kan. 118, 120-21, 804 P.2d 967 (1991)." *Keel*, 302 Kan. at 582.

The *Keel* court further stated:

"In short, *Vandervort* stood for the proposition that a prior conviction should be classified for criminal history purposes based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed, and *State v. Williams*, 291 Kan. 554, 244 P.3d 667 (2010), did not fully acknowledge *Vandervort*'s application of this rule. Consequently, *Williams* failed to apply the rule to the classification issue before it." *Keel*, 302 Kan. at 585.

*Keel* overruled *Williams* and *Murdock I* "[b]ecause the result reached in [*Murdock I*] was dictated by *Williams*." *Keel*, 302 Kan. at 589. The *Keel* court stated its decision was consistent with the 2014 legislative amendments to K.S.A. 21-6810 and K.S.A. 21-6811 (formerly K.S.A. 21-4710 and K.S.A. 21-4711, respectively). 302 Kan. at 590. However, *Keel*'s holding was expressly grounded in prior caselaw:

"Based on *Vandervort* and *Sylva,* the punishment for a current crime is set at the time the crime is committed. Thus, the classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed." *Keel*, 302 Kan. at 589-90.

The basis for *Keel*'s holding is important because *Keel* examined the same statutory provision at issue here—K.S.A. 21-4711(e)—rather than addressing whether subsequent legislative amendments applied retroactively. See 302 Kan. at 580, 589-91.

*Vandervort* was good law when it was decided in 2003. It was still good law and should have been applied when *Williams* was decided in December 2010. *Vandervort* was also the basis for the decision in *Keel*; thus, it was necessarily still good law when *Keel* was decided in August 2015. See *Keel*, 302 Kan. at 585, 589-90.

The *Williams* court seemed to suggest its ruling was not necessarily a change in the law as it concluded there was no applicable caselaw or statutory authority to guide its decision. 291 Kan. at 560. However, *Keel* interpreted *Williams* as departing from the precedent in *Vandervort*; thus, *Williams* was a change in the law. See *Keel*, 302 Kan. at 582, 589-90. Because *Williams* was decided after Adams was sentenced, it represented a subsequent change in the law. As our Supreme Court stated in *Murdock II*: "[A] pronounced sentence is either legal or illegal according to then-existing law. Therefore, for purposes of a motion to correct an illegal sentence, neither party can avail itself of subsequent changes in the law." 309 Kan. at 591. Our Supreme Court reiterated this principle in *State v. Dawson*, 310 Kan. 112, 116, 444 P.3d 914 (2019), stating: "If the sentence was legal when originally imposed, a subsequent change in the law cannot transform a legal sentence into an illegal sentence."

Adams committed the current crime of conviction in October 2008 and was sentenced in July 2010. *Vandervort* was the controlling law in effect at the time Adams

was sentenced. Based on *Vandervort*, Adams' 1988 Missouri robbery conviction was scoreable as a person offense based on the 2008 codification of Kansas' robbery statute, K.S.A. 21-3426, which classified robbery as a severity level 5 person felony.

2.       *Does* Williams *provide Adams with the relief he seeks*?

The rule announced in *Murdock II* did not "disturb our longstanding rule that in a direct appeal, a defendant will receive the benefit of any change in the law that occurs while the direct appeal is pending. See, e.g., *State v. Ford*, 302 Kan. 455, 471, 353 P.3d 1143 (2015) ('[I]t is generally true that changes in the law apply prospectively and only to cases on direct review.')." 309 Kan. at 591. Here, although the parties agree *Williams* was a change in the law, the parties dispute whether the fact *Williams* was decided while Adams' direct appeal was pending entitles him to relief by virtue of *Murdock I*'s extension of *Williams*.

The State argues *Williams* provides Adams no relief and offers two reasons why Adams' arguments fail. First, the State argues Adams is not entitled to the benefit of a change in the law under *Williams* because Adams' direct appeal is no longer pending. Relying on *State v. McAlister*, 310 Kan. 86, 444 P.3d 923 (2019), the State asserts: "Because Adams is attacking his sentence collaterally via a motion to correct an illegal sentence rather than a direct appeal, he is stuck with the law in effect at the time the sentence was pronounced." Second, the State argues even if *Williams* applies, Adams is not entitled to relief because his direct appeal had concluded before *Murdock I* was decided.

The State's first argument seems to be premised on an overly narrow reading of *McAlister*. The *McAlister* court held a defendant on direct appeal will receive the benefit of a subsequent change in the law, whereas someone moving to correct an illegal sentence under K.S.A. 22-3504 "'is stuck with the law in effect at the time the sentence

10

was pronounced.' 309 Kan. at 592." 310 Kan. at 91. But the *McAlister* court further stated: "McAlister does not argue that his sentences were illegal on February 3, 1999, when his direct appeal mandate was issued and his sentences became final." 310 Kan. at 91. Although *McAlister* did not decide the point, its reference to the date the direct appeal mandate was issued appears significant. To us, *McAlister* suggests a challenge can be raised through a motion to correct an illegal sentence based on a change in the law during the pendency of a direct appeal even though it was not originally raised in the direct appeal.

The State's reliance on *McAlister* is likely misplaced. However, Adams does not cite *McAlister* in his brief. Rather, Adams relies on the statutory definition of a change in the law set forth in K.S.A. 2019 Supp. 22-3504(c)(2): "'Change in the law' means a statutory change or an opinion by an appellate court of the state of Kansas, unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction." He further relies on K.S.A. 2019 Supp. 22-3504(d), providing: "The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." Based on these definitions, Adams argues: "*Williams* was not a change in the law as applied to Adams' sentence, since it occurred while his direct appeal was pending."

Whether a sentence is illegal for purposes of a motion to correct an illegal sentence "is exclusively a matter of state statutory law." *Dickey II*, 305 Kan. at 221. A sentence is only illegal within the meaning of K.S.A. 22-3504 if it fits the definition of "illegal sentence" in K.S.A. 2019 Supp. 22-3504(c)(1). "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2019 Supp. 22-3504(c)(1). However, the statutory definition of a "change in the law" does not include an opinion "issued while the sentence is pending an appeal from the judgment of conviction." K.S.A. 2019 Supp. 22-3504(c)(2). Based on the retroactivity provision of K.S.A. 2019 Supp. 22-3504(d), Adams is not barred from raising an illegal

11

sentence claim based on *Williams* because his direct appeal was still pending after *Williams* was decided. But, as the State points out, the pertinent question is not really whether Adams is entitled to relief under *Williams*. Rather, the determinative issue is whether Adams can receive the benefit of *Murdock I*. In other words, is *Murdock I* a change in the law within the meaning of K.S.A. 2019 Supp. 22-3504(c)(2)?

Although Adams claims his sentence is illegal under *Williams*, he argues "that *Williams*, vis a vis *Murdock I*, required that his 1988 Missouri robbery conviction be scored as a non-person felony." Adams' argument is really that *Murdock I* was dictated by *Williams*; therefore, the result in *Murdock I* is necessarily required under *Williams*. However, as the State points out, Kansas appellate courts did not apply *Williams* consistent with *Murdock I* during the pendency of Adams' direct appeal. As the *Murdock I* court noted:

> "Since [*Williams*], the Court of Appeals has followed *Williams* when the prior out-of-state offense was committed after the sentencing guidelines were adopted in 1993. See, *e.g.*, *State v. McKinney*, No. 102,906, 2010 WL 5185779, at *1 (Kan. App. 2010) (unpublished opinion) (scoring a 2002 Oklahoma conviction based on the designation for the comparable Kansas offense at the time the Oklahoma offense was committed). But the Court of Appeals, including the *Murdock* panel, has adopted a different rule when the prior out-of-state crimes were committed before Kansas adopted the person/nonperson offense designation in 1993." *Murdock I*, 299 Kan. at 316.

*Murdock I* then quoted the rule applied by the *Murdock* Court of Appeals panel— "'Kansas courts have routinely classified pre-1993 offenses as either person or nonperson for criminal history purposes by comparing the offenses to current guidelines offenses.' *Murdock*, 2011 WL 4031550, at *2." 299 Kan. at 316. The *Murdock I* court noted this same rule was applied by other Court of Appeals panels.

12

The State appears correct in arguing *Murdock I* represented a change in the law after Adams' sentence became final. *Williams* clearly applied to out-of-state offenses committed after the enactment of the KSGA. However, between the time *Williams* was decided—December 10, 2010—and the date Adams' direct appeal mandate was issued—September 5, 2013—no Kansas appellate court had applied *Williams*' holding to pre-KSGA out-of-state convictions. See *Murdock I*, 299 Kan. at 316; *State v. Mitchell*, No. 104,833, 2012 WL 1649831, at *7 (Kan. App. 2012) (unpublished opinion); *State v. Mims*, No. 103,044, 2011 WL 4563068, at *5 (Kan. App. 2011) (unpublished opinion); *State v. McKinney*, No. 102,906, 2010 WL 5185779, at *1 (Kan. App. 2010) (unpublished opinion). Accordingly, the relief Adams now seeks would not have been available to him during the pendency of his direct appeal based on then-existing caselaw applying *Williams*.

This issue is, however, somewhat complicated by our Supreme Court's decision in *Murdock II* and the legislative amendments that followed. In *Murdock II*, our Supreme Court stated:

> "There are times, however, when subsequent developments in the law might undermine an earlier merits determination. That is, true *changes* in the law cannot transform a once legal sentence into an illegal sentence, but developments in the law may shine new light on the original question of whether the sentence was illegal when pronounced." 309 Kan. at 592.

Under this language from *Murdock II*, we believe the decision in *Murdock I* was a short-lived change in the law. *Murdock I* determined Murdock's sentence was illegal when pronounced based on *Williams*. But shortly after *Murdock II* was decided, the Legislature amended K.S.A. 22-3504. See L. 2019, ch. 59, § 15. Specifically, the legislative amendments included the addition of K.S.A. 2019 Supp. 22-3504(c)(2) and (d). The language contained therein was not present in K.S.A. 2018 Supp. 22-3504.

13

The plain language of K.S.A. 2019 Supp. 22-3504(c)(2) appears directly responsive to the above-quoted language from *Murdock II*. We must presume the Legislature does not intend to enact meaningless legislation when it amends a statute. *Montgomery v. Saleh*, 311 Kan. 649, 655, 466 P.3d 902 (2020). Appellate courts also generally presume the Legislature acts with full knowledge about statutory subject matter, including prior and existing law and judicial decisions interpreting the same. *State v. Kershaw*, 302 Kan. 772, 782, 359 P.3d 52 (2015). When interpreting a statute, an appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language and should refrain from reading something into the statute not readily found in its words. *State v. Ayers*, 309 Kan. 162, 163-64, 432 P.3d 663 (2019).

K.S.A. 2019 Supp. 22-3504(c)(2) is plain and unambiguous; a "'[c]hange in the law' means a statutory change or an opinion by an appellate court of the state of Kansas, *unless the opinion is issued while the sentence is pending an appeal from the judgment of conviction*." (Emphasis added.) Based on this plain language, *Murdock I* is a change in the law as applied to Adams because the decision in *Murdock I* was issued after the conclusion of Adams' direct appeal.

Adams affirmatively argues the 2019 amendments to K.S.A. 22-3504 should be applied retroactively based on the plain language of K.S.A. 2019 Supp. 22-3504(d). Unfortunately for Adams, this retroactive application of the 2019 amendments works to his detriment. Under *Murdock II*, the decision in *Murdock I* was a short-lived change in the law. See 309 Kan. at 593 ("*Murdock* was controlling law [albeit for a short window of time] and in effect when Murdock's second sentence was pronounced."). But K.S.A. 2019 Supp. 22-3504(c)(2) does not distinguish between "true *changes* in the law" and "developments in the law," as our Supreme Court did in *Murdock II*. See 309 Kan. at 592.

14

Under the plain language of K.S.A. 2019 Supp. 22-3504(c), *Murdock I* represents a change in the law occurring after Adams' sentence was imposed, but Adams is not entitled to the benefit of the change in the law because *Murdock I* was decided after the conclusion of Adams' direct appeal. However, Adams is entitled to the benefit of *Williams* because *Williams* was decided while his direct appeal was pending. Adams would also be entitled to the benefit of any appellate court decisions applying *Williams* while his direct appeal was still pending. See K.S.A. 2019 Supp. 22-3504(c)(2). But, as previously mentioned, no appellate case applied *Williams* in the same manner as *Murdock I* while Adams' direct appeal was pending.

Adams further asserts the decision in *Murdock II* renders his sentence illegal under *Williams*. Adams is incorrect. He largely overreads the holding in *Murdock II*, relying on the following:

> "[T]he legality of a sentence under K.S.A. 22-3504 is controlled by the law in effect at the time the sentence was pronounced. The legality of a sentence is fixed at a discrete moment in time—the moment the sentence was pronounced. At that moment, a pronounced sentence is either legal or illegal according to then-existing law." 309 Kan. at 591.

The problem with Adams' argument is *Murdock II* related to the legality of the sentence imposed when Murdock was *resentenced* based on the mandate in *Murdock I*. The "discrete moment in time" *Murdock II* referred to was the time of Murdock's *resentencing*. The *Murdock II* court explained Murdock's second sentence was legal for two reasons:

> "First, Murdock's second sentence was legally imposed according to our *Murdock* mandate. We reject the State's argument that *Murdock* was simply an aberration or 'oops' in the law. Instead, *Murdock* was controlling law (albeit for a short window of time) and in effect when Murdock's second sentence was pronounced. Second, *Keel* changed the

15

law because it explicitly overruled *Murdock*'s holding that prior out-of-state crimes must be scored as nonperson offenses. *Keel*, 302 Kan. at 589. As a result, *Keel* does not render Murdock's second sentence illegal, and his prior out-of-state crimes were correctly classified as nonperson felonies under *Murdock*. However, we acknowledge that *Keel* controls for defendants sentenced after *Keel* was decided." 309 Kan. at 593.

The decision in *Murdock II* says nothing about the propriety of the analysis in *Murdock I*. Murdock's second sentence as recognized in *Murdock II* was only legal insofar as it complied with the mandate in *Murdock I*. The State did not appeal after Murdock was resentenced but later filed a motion to correct an illegal sentence based on the Supreme Court's decision in *Keel*. *Murdock II* held the State could not use its decision in *Keel* to subsequently attack the legality of Murdock's second sentence because it was legally imposed *at the time of resentencing* pursuant to the mandate in *Murdock I*. 309 Kan. at 590-93. The holding in *Murdock II* does not mean Murdock's first sentence was illegal under *Williams*; it only means Murdock's second sentence was legal under *Murdock I*.

Like Murdock, the decision in *Keel* does not affect the legality of Adams' sentence because *Keel* was decided after Adams' direct appeal concluded. But unlike Murdock, Adams was not sentenced between the decision in *Murdock I* and *Keel*, and Adams' direct appeal concluded prior to the decision in *Murdock I*. Adams cannot avail himself of the benefit of *Murdock I* based on *Murdock II*. Adams' sentence was legal when it was pronounced based on then-existing law—*Vandervort*. As our Supreme Court later indicated in *Keel*, the decision in *Williams* represented a departure from *Vandervort*. See *Keel*, 302 Kan. at 582. The extension of *Williams* for which Adams is arguing only came about in *Murdock I*: "We overrule all Court of Appeals decisions applying the rule recited by the Court of Appeals panel in this case. We reverse the Court of Appeals and the district court and remand for resentencing with directions to classify the prior out-of-state convictions as nonperson offenses." 299 Kan. at 319.

16

*Murdock I* was a change in the law occurring after Adams' sentence was imposed, but Adams is not entitled to the benefit of the change in the law because *Murdock I* was decided after the conclusion of Adams' direct appeal. See K.S.A. 2019 Supp. 22-3504(c). Adams is not entitled to relief because his original sentence was lawfully imposed under *Vandervort* and how Kansas appellate courts applied *Williams* during the pendency of Adams' direct appeal would not have established his sentence was illegal at that time. The district court did not err in summarily denying Adams' motions to correct an illegal sentence.

Affirmed.