NOT DESIGNATED FOR PUBLICATION

No. 122,414

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHN P. ZAPATA-BELTRAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TIMOTHY J. CHAMBERS, judge. Opinion filed October 22, 2021. Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., MALONE and BUSER, JJ.

PER CURIAM: John Zapata-Beltran pleaded guilty to numerous felony offenses in 2017, including several drug crimes and criminal possession of a firearm. The district court sentenced him to a 73-month prison sentence, then suspended the sentence and granted Zapata-Beltran 36 months of probation. About 30 months into his probation term, police found a loaded gun in his bedroom closet—a new crime and a violation of the conditions of his probation. After hearing evidence concerning the gun, the district court revoked his probation and ordered him to serve his underlying prison sentence. He now appeals that decision and also argues that his prison sentence is illegal. We affirm.

1

Early on the morning of May 13, 2015, officers from the Hutchinson Police Department successively obtained and executed three search warrants on Zapata-Beltran's house and car. In the house, police found plastic baggies, a torn corner of a baggie containing crystal residue, and two marijuana cigarettes. And while searching the trunk of the car, police discovered two backpacks containing various quantities of recreational and prescription drugs, a handgun, and two sets of digital scales. As a result of these discoveries, Zapata-Beltran pleaded guilty in 2017 to possession with intent to sell methamphetamine, hydromorphone, and marijuana; possession of hydrocodone; two counts of possession of drug paraphernalia; criminal possession of a firearm; and aggravated endangering of a child.

The presentence investigation report in Zapata-Beltran's case classified his criminal-history score as B. The report indicated that Zapata-Beltran had previously committed 2 person felonies (a 2006 conviction for contributing to a child's misconduct and a 2010 conviction for criminal threat), 2 nonperson felonies, 2 person misdemeanors, and 21 nonperson misdemeanors. At the sentencing hearing, both the prosecutor and defense counsel indicated there were no objections to the reported criminal-history score. And Zapata-Beltran did not object to or otherwise challenge any of the information in the report. Instead, he asked the court for a dispositional departure sentence to allow him to continue working and stay out of prison. The court granted this request, imposing an underlying 73-month prison sentence but suspending that sentence and ordering Zapata-Beltran to serve 36 months of probation.

As part of his probation, Zapata-Beltran agreed to refrain from violating the law; he also separately agreed that he would not possess any firearms (though possession of a firearm by a person recently convicted of a felony is itself a crime). But in September 2019, the Barton County Sheriff's Office obtained a warrant and searched Zapata-

Beltran's home in Great Bend, where he lived with his wife and children. During the search, deputies found a loaded pistol in Zapata-Beltran's bedroom closet on top of a personal safe. As a result of this discovery, as well as a few other alleged violations, the State asked the court to revoke his probation and impose his original prison sentence.

The district court held an evidentiary hearing on the State's request. At the hearing, Zapata-Beltran's stepfather testified that he met a friend at Zapata-Beltran's house the day before the search and purchased the gun. Since nobody else was home, he placed the gun in Zapata-Beltran's closet, spent the night at the house, and left the next morning. Zapata-Beltran stated that he and his wife and children returned home the morning of the search.

The district court found the testimony from Zapata-Beltran's stepfather lacked credibility. Though the court found the evidence was insufficient to prove the State's other alleged violations, it found that Zapata-Beltran had possessed a firearm—a violation of his probation and a new crime. In light of the serious nature of this violation and of Zapata-Beltran's convictions, the court revoked his probation and ordered him to serve his underlying prison sentence.

DISCUSSION

Zapata-Beltran appeals, challenging the legal and discretionary bases for the district court's revocation of his probation. He also raises two challenges to the legality of his sentence. After carefully reviewing the record and the parties' arguments, we conclude that Zapata-Beltran has not apprised us of error. We therefore affirm the district court's decision.

1. *The district court did not abuse its discretion when it revoked Zapata-Beltran's probation.*

Zapata-Beltran argues the district court erred in two respects when it revoked his probation and imposed his underlying sentence. He asserts the court abused its discretion when it ordered him to serve his prison sentence rather than remain on probation, as this was his only probation violation in the 30 months he had been supervised. He also asserts—for the first time on appeal—that the court erred as a matter of law, claiming the restriction on his possession of a firearm violates the United States and Kansas Constitutions.

Probation is an act of judicial leniency afforded a person as a privilege rather than a right. See *State v. Gary*, 282 Kan. 232, 237, 144 P.3d 634 (2006). A district court's decision to revoke probation usually involves two steps—a factual determination that the probationer has violated a condition of probation and a discretionary determination as to the appropriate disposition in light of the proved violations. *State v. Skolaut*, 286 Kan. 219, Syl. ¶ 4, 182 P.3d 1231 (2008). The State has the burden to prove a person violated the terms of his or her probation by a preponderance of the evidence. *State v. Lloyd*, 52 Kan. App. 2d 780, Syl. ¶ 1, 375 P.3d 1013 (2016). Appellate courts uphold a district court's factual findings when they are supported by substantial competent evidence in the record—"'evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved.'" *State v. Brown*, 300 Kan. 542, 546, 331 P.3d 781 (2014).

After a violation has been established, the decision to reinstate probation or to revoke and incarcerate the offender rests within the sound discretion of the district court. See *Skolaut*, 286 Kan. at 227-28. A district court abuses that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d

4

1049 (2019); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). Zapata-Beltran carries the burden of showing that the district court abused its discretion. See *State v. Stafford*, 296 Kan. 25, 45, 290 P.3d 562 (2012).

In May 2015, when police originally searched Zapata-Beltran's house and car, Kansas imposed a system of graduated sanctions for probation violations in felony cases. Under this system, a district court faced with a violation of probation could impose an intermediate sanction or revoke probation, depending on the nature of the violation and the number of previous violations that had occurred. See *State v. McFeeters*, 52 Kan. App. 2d 45, 47-48, 362 P.3d 603 (2015). Generally, a court had to impose at least two intermediate sanctions before revoking probation. K.S.A. 2014 Supp. 22-3716(c)(1)(A)-(E). But a court could revoke probation without imposing these sanctions if the probationer committed a new crime. K.S.A. 2014 Supp. 22-3716(c)(8).

Zapata-Beltran does not challenge the district court's factual finding that he possessed the firearm, and thus violated the terms of his probation. And he acknowledges that possession of a firearm by a person who has previously committed a felony is a crime. See K.S.A. 2020 Supp. 21-6304(a)(3)(A). But he argues the court abused its discretion when it revoked his probation instead of imposing a lesser sanction.

In particular, Zapata-Beltran points out that possessing the firearm was the first violation of his probation, occurring 30 months into a 36-month probation term. And he notes that though his convictions eventually resulted from a guilty plea, the district court had originally suppressed the evidence that led to those convictions. Given these factors, he argues that it was inherently unreasonable to impose his underlying sentence. But we disagree.

As the district court acknowledged when it revoked his probation, Zapata-Beltran pleaded guilty to several serious offenses, including criminal possession of a weapon.

5

Though the court originally granted him leniency by way of probation, Zapata-Beltran knew that he was prohibited both by law and by the terms of his probation from possessing a firearm. This violation was made all the more egregious considering the firearm was loaded and Zapata-Beltran had several young children living with him in the house. And this crime—criminal possession of weapon—was one of the crimes that led to Zapata-Beltran's current sentence. The district court did not abuse its discretion when it revoked Zapata-Beltran's probation after he committed this new offense.

Zapata-Beltran also argues that the revocation of his probation based on his possession of a firearm violated his right to bear arms under section 4 of the Kansas Constitution Bill of Rights. Zapata-Beltran acknowledges that he did not raise this constitutional argument—either as a facial challenge or as the statute applies to him—before the district court.

Constitutional claims generally cannot be raised for the first time on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018). Thus, before this court will consider the merits of Zapata-Beltran's constitutional claim, he must convince us that his claim "involves only a question of law arising on proved or admitted facts" or that consideration of his claim "is necessary to preserve the ends of justice or to prevent the denial of fundamental rights." *State v. Perkins*, 310 Kan. 764, Syl. ¶ 2, 449 P.3d 756 (2019). Zapata-Beltran urges us to consider this claim for the first time on appeal because this case implicates his fundamental right to bear arms under the Kansas Constitution. But we decline to do so.

As a starting point, the fact that Zapata-Beltran's argument may implicate a constitutional right does not, in and of itself, mean that the issue must be addressed for the first time on appeal. Appellate courts often decline to review constitutional arguments because those arguments were not raised below if the record does not otherwise warrant or permit meaningful consideration. See *Daniel*, 307 Kan. at 430 (declining to review

6

unpreserved challenge under the Ex Post Facto Clause to offender registration statutes); *State v. Godfrey*, 301 Kan. 1041, 1042-43, 350 P.3d 1068 (2015) (declining to review unpreserved due-process claims to a plea agreement); see also *State v. King*, 288 Kan. 333, 204 P.3d 585 (2009) (declining to consider an alleged violation of the defendant's Fifth Amendment rights when there had been no contemporaneous objection to the potentially infringing testimony).

To decide the merits of Zapata-Beltran's constitutional claim, this court would need to determine—at a minimum—whether section 4 provides coextensive protection to the Second Amendment to the United States Constitution. This is particularly important here because in *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008), the Supreme Court's seminal decision on the scope of the Second Amendment, the Court emphasized that the Second Amendment does *not* prohibit restrictions on possession of firearms by people who have been convicted of felonies. 554 U.S. at 626 ("nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons").

For claims brought under the Kansas Constitution, the Kansas Supreme Court has indicated that anyone advocating a different reading of a Kansas constitutional provision from its federal counterpart must "explain why [Kansas courts] should depart from [their] long history of coextensive analysis of rights under the two constitutions." *State v. Boysaw*, 309 Kan. 526, 538, 439 P.3d 909 (2019). Thus, Zapata-Beltran must articulate something in "the history of the Kansas Constitution or in our caselaw that would suggest a different analytic framework" should apply to distinguish section 4 from the Second Amendment. 309 Kan. at 536.

Zapata-Beltran's brief points to textual differences in the federal and state charters and the fact that section 4 was amended in 2010. But textual differences in and of themselves are not sufficient to evince a difference in constitutional meaning. See 309

Kan. at 536-38 (rejecting the argument that sections 10 and 18 of the Kansas Constitution Bill of Rights provide greater protection than the federal Due Process Clause, despite marked textual differences between them). And Zapata-Beltran provides no reason why the 2010 amendment to the Kansas Constitution, adopted less than two years after *Heller* held that the Second Amendment conferred an individual right to bear arms, aimed to provide different protections than existing federal law. See *Heller*, 554 U.S. at 595. Our analysis of such a question would require historical development not found in the record before us.

Zapata-Beltran does not provide any factual, historical, or legal reason why Kansans intended the protections of the Kansas Constitution to apply more broadly to persons convicted of felonies than the United States Constitution does. Nor does he address whether the fact that the prohibition against possessing a firearm was also a condition of his probation—imposed as a result of multiple recent felony convictions— changes this analysis. Indeed, section 4's language recognizing an individual right to bear arms for "any . . . lawful purpose" appears to cut against Zapata-Beltran's broad reading. See section 4, Kansas Constitution Bill of Rights (2020 Supp.) He has not convinced us that the fact that this case involves a firearm, and that section 4 provides some protection for carrying firearms, weighs in favor of wading into these arguments without additional factual, historical, and legal development.

The district court did not abuse its discretion when it revoked Zapata-Beltran's probation and imposed his underlying 73-month prison sentence.

2. *Zapata-Beltran received a legal sentence.*

In addition to his arguments regarding the revocation of his probation, Zapata-Beltran's appeal raises two claims challenging the legality of his underlying prison sentence. Both sentencing challenges relate to the legal accuracy of the criminal history

used to determine Zapata-Beltran's sentence. Though he did not present either sentencing challenge to the district court, Kansas law recognizes that a court may correct an illegal sentence at any time, even when first raised on appeal. See K.S.A. 2020 Supp. 22-3504(a); *State v. Sartin*, 310 Kan. 367, Syl. ¶ 2, 446 P.3d 1068 (2019). And a sentence based on an incorrect criminal-history score is illegal. See K.S.A. 2020 Supp. 22-3504(c)(1); *State v. Neal*, 292 Kan. 625, 631, 258 P.3d 365 (2011).

Zapata-Beltran first contends his criminal-history score of B was incorrect because the State failed to prove that his prior conviction of contributing to a child's misconduct was a felony (as it was treated at sentencing) rather than a misdemeanor.

Unless a defendant admits his or her criminal history, the State bears the burden of establishing a prior conviction by a preponderance of the evidence. K.S.A. 2020 Supp. 21-6814(a); see also *State v. Hankins*, 304 Kan. 226, Syl. ¶ 3, 372 P.3d 1124 (2016) (a criminal defendant cannot stipulate to an illegal sentence). A presentence investigation report that clearly identifies the defendant's previous convictions generally meets the State's burden of proof. K.S.A. 2020 Supp. 21-6814(b). A defendant who believes the report inaccurately characterizes a previous conviction must inform the district attorney and the court about the error. Otherwise, if the defendant later challenges a previously established criminal history, the defendant bears the burden of proof. K.S.A. 2020 Supp. 21-6814(c).

The Kansas Supreme Court has also noted that if the presentence investigation report does not specify which version of a crime applies, the report is insufficient to sustain the State's burden of proof. See *State v. Obregon*, 309 Kan. 1267, 1269, 1275, 444 P.3d 331 (2019). In those circumstances—regardless of whether the defendant objects to the history set forth in the report—the State must provide additional evidence to identify (and categorize for criminal-history purposes) the defendant's specific crime of conviction. See 309 Kan. at 1275.

Zapata-Beltran's presentence investigation report indicated his 2006 conviction for contributing to a child's misconduct was an "AFP"—an adult person felony—and cited K.S.A. 21-3612 as the conviction's basis. See K.S.A. 2020 Supp. 21-5603(a) (essentially recodifying K.S.A. 21-3612); K.S.A. 2006 Supp. 21-3612(a)-(b). That statute contained six subsections criminalizing different conduct. K.S.A. 2006 Supp. 21-3612(a)(1)-(6). Four subsections described crimes that were nonperson misdemeanors, and two were person felonies. K.S.A. 2006 Supp. 21-3612(a).

Zapata-Beltran contends the State did not carry its initial burden of proof at sentencing because the report did not specify which statutory subsection formed the basis for his 2006 conviction. But we disagree. Though the report cited to the statute generally, it identified Zapata-Beltran's 2006 conviction for contributing to a child's misconduct as a person felony. Zapata-Beltran did not object to this characterization. Thus, consistent with K.S.A. 2020 Supp. 21-6814(c), the district court did not err at sentencing when it found the report satisfied the State's burden to sufficiently identify Zapata-Beltran's conviction for contributing to a child's misconduct.

In his second challenge to his criminal history, Zapata-Beltran argues the district court erred when it considered his 2010 conviction for criminal threat as part of his criminal history. He points out that the presentence investigation report did not indicate whether his criminal-threat conviction was for intentional or reckless conduct. And in 2019, about two-and-a-half years after Zapata-Beltran's sentence was imposed, the Kansas Supreme Court held that the statutory provision defining the crime of reckless criminal threat was unconstitutionally overbroad. See *State v. Boettger*, 310 Kan. 800, 822-23, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020).

A sentence's legality is fixed upon pronouncement of the sentence. That legality hinges on the law that existed at the time of sentencing; changes made after the

termination of a defendant's direct appeal do not alter the legality of a sentence. *State v. Murdock*, 309 Kan. 585, 591-92, 439 P.3d 307 (2019). Thus, a sentence is not rendered illegal by a postsentencing change in the law. K.S.A. 2020 Supp. 22-3504(c)(1); see *State v. Dawson*, 55 Kan. App. 2d 109, 117, 408 P.3d 995 (2017) (finding 2017 amendment defining "illegal sentence" as not including a change in the law to be retroactive), *aff'd on other grounds* 310 Kan. 112, 118, 444 P.3d 914 (2019) (declining to consider retroactivity of amendment). A "change in the law" includes an appellate opinion issued after the end of a direct appeal. K.S.A. 2020 Supp. 22-3504(c)(2).

In *Boettger*, the Kansas Supreme Court held the reckless disregard provision of the criminal-threat statute was unconstitutionally overbroad. 310 Kan. at 822-23. Relying on *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003), which clarified the meaning of true threats that are not protected by the First Amendment, the court found the statute could encompass protected speech because it lacked a specific intent requirement. *Boettger*, 310 Kan. at 822-23.

Noting that a statute that has been found unconstitutional cannot be used when calculating a criminal-history score, Zapata-Beltran asserts the State failed to present sufficient evidence that his prior criminal-threat conviction was for intentional rather than reckless conduct. See K.S.A. 2020 Supp. 21-6810(d)(9). Zapata-Beltran acknowledges that *Boettger* was decided after he was sentenced in 2017. In an effort to overcome this hurdle, Zapata-Beltran argues *Boettger* was not a change in the law as it merely applied *Black*, which was decided in 2003, before Zapata-Beltran's original sentencing. He also contends that the district court could have imposed a lesser sentence when revoking his probation, which occurred after *Boettger* was decided, so he is entitled to the benefit of *Boettger*'s holding.

Our court has consistently rejected Zapata-Beltran's first argument—that *Boettger* was a legal development rather than a change in the law. See *State v. Louis*, 59 Kan. App.

2d 14, 26-27, 476 P.3d 837 (2020) (finding *Boettger* was a change in the law by noting that *Black* did not state the requisite level of intent needed to criminalize speech, and other courts have reached different conclusions about that level), *rev. denied* 314 Kan. ___ (August 27, 2021); *State v. McCullough*, No. 122,167, 2021 WL 646111, at *3-4 (Kan. App.) (unpublished opinion) (in appeal of probation revocation, noting *Boettger* was change in the law that occurred after time to directly appeal sentence expired), *rev. denied* 313 Kan. 1044 (2021); *State v. Miller*, No. 121,792, 2020 WL 6533257, at *3-4 (Kan. App. 2020) (unpublished opinion) (*Boettger* was a change in the law; *Black* neither stated whether a reckless threat is unconstitutional nor directly addressed whether the First Amendment prohibits a conviction for reckless speech), *rev. denied* 313 Kan. 1044 (2021); see also *State v. Adams*, 58 Kan. App. 2d 933, 943-44, 476 P.3d 796 (2020) (K.S.A. 2019 Supp. 22-3504[c][2] defining "change in the law," which was added in 2019, was likely a response to *Murdock*; statute does not distinguish between true changes and developments in the law and encompasses both), *rev. denied* 312 Kan. 893 (2021). We similarly find this argument unpersuasive.

*Boettger* was not the straight-forward application of *Black* that Zapata-Beltran asserts. Rather, *Boettger* adopted an interpretation of *Black* that had not been uniformly adopted. See *Boettger*, 310 Kan. at 812-17, 820-22 (rejecting other courts' interpretations of *Black* requiring only the intent to make the statement, not that the statement be threatening, citing federal Circuit Courts of Appeals opinions requiring a subjective intent, and discussing other United States Supreme Court opinions discussing subjective intent). Given the adoption of a standard that was not expressly stated in *Black*, *Boettger* changed Kansas law. Since the time for Zapata-Beltran to appeal his sentence expired before *Boettger* was decided, that case that does not apply to him.

Zapata-Beltran also notes the district court could have imposed a lesser sentence when revoking his probation. But that possibility does not mandate that *Boettger* apply. A defendant may benefit from changes in the law that occur during direct appeal, but that

only applies to the direct appeal of a sentence. See *Murdock*, 309 Kan. at 591 (law in effect at time of sentencing governs); *State v. Resto-Isaac*, No. 122,226, 2021 WL 2387474, at *5-6 (Kan. App. 2021) (unpublished opinion) (appeal of probation revocation is not a direct appeal of conviction or sentence), *petition for rev. filed* July 12, 2021; *McCullough*, 2021 WL 646111, at *3-4 (same). And though the court could have resentenced Zapata-Beltran, it did not do so. He is serving the sentence ordered in 2017. The district court did not err when it included Zapata-Beltran's 2010 conviction for criminal threat when determining his criminal-history score.

In sum, the district court did not impose an illegal sentence when it considered Zapata-Beltran's 2006 and 2010 felony convictions as part of his criminal history for sentencing purposes.

Affirmed.